Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck, NY 11021-3104
Telephone:  (516) 268-7080
spencer@spencersheehan.com

United States District Court
Southern District of New York                                     7:20-cv-09148

| | |
|---|---|
| Syuzanna Alexander, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Wegmans Food Markets, Inc., | |
| Defendant | |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.     Wegmans Food Markets, Inc. ("defendant") manufactures, distributes, markets, labels and sells organic almond milk under its Wegmans brand purporting to taste like vanilla and be flavored exclusively and/or predominantly from vanilla beans ("Product").

2.     Unfortunately for consumers, the Product does not taste like vanilla because it is not flavored mainly from vanilla beans.

3.     The Product is available to consumers from defendant's retail stores and website and is sold in cartons of 64 OZ (1.89L).

4.     The relevant front label representations include "Vanilla," "Vanilla Soymilk" and "Organic."



5.      The representation as "Vanilla" is false, deceptive and misleading because the Product is not flavored predominantly from vanilla beans, which means it lacks the vanilla taste expected by consumers.

6.      Vanilla comes from an orchid plant that originated in Mexico where it was first cultivated.

7.      The vanilla orchid produces the vanilla bean, which is the raw material for vanilla flavorings.

8.      The vanilla bean is not consumed by itself – it is heated in the sun for weeks and then

2

soaked in an alcohol solution and its flavor constituents extracted (vanilla extract).

9.     An example of the compounds which provide vanilla's flavor are shown below in a

sample of vanilla extract.

| MS Scan # | Area Integration | Peak Assignment | Peak Area % |
|---|---|---|---|
| 67 | 16132 | hexanal | 0.0206 |
| 71 | 16235 | butanediol isomer | 0.0207 |
| 81 | 57370 | butanediol isomer | 0.0732 |
| 103 | 36387 | 3-methylbutyric acid | 0.0464 |
| 115 | 33053 | furfural | 0.0422 |
| 141 | 27408 | butanal, diethyl acetal | 0.0350 |
| 262 | 18390 | 3-methylbutanal, diethyl acetal | 0.0235 |
| 281 | 25224 | hexanoic acid | 0.0322 |
| 289 | 2729 | methyl furfural | 0.0035 |
| 299 | 52183 | phenol + trace of benzaldehyde | 0.0665 |
| 349 | 2385 | 1H-pyrrole-2-carboxaldehyde | 0.0030 |
| 379 | 47287 | limonene + benzyl alcohol | 0.0603 |
| 397 | 13835 | heptanoic acid | 0.0176 |
| 409 | 31102 | gamma-hexalactone | 0.0397 |
| 415 | 19338 | p-cresol | 0.0247 |
| 425 | 4470 | hexanal, diethyl acetal | 0.0057 |
| 443 | 287479 | guiaicol | 0.3666 |
| 453 | 5947 | nonanal | 0.0076 |
| 477 | 10000 | phenylethyl alcohol | 0.0128 |
| 496 | 112067 | ? | 0.1429 |
| 505 | 44668 | benzoic acid + octanoic acid | 0.0570 |
| 522 | 4551 | diethyl succinate | 0.0058 |
| 536 | 2461 | ethyl benzoate | 0.0031 |
| 544 | 11769 | 1,2-benzenediol | 0.0150 |
| 555 | 145356 | 2-methoxy-4-methylphenol | 0.1854 |
| 567 | 2537 | methyl salicylate | 0.0032 |
| 587 | 8552 | hydroxy methyl furfural (HMF) | 0.0109 |
| 594 | 5555 | benzeneacetic acid | 0.0071 |
| 605 | 101562 | nonanoic acid | 0.1295 |
| 624 | 6802 | hydroquinone | 0.0087 |
| 631 | 3864 | 4-methoxybenzaldehyde (p-anisaldehyde) | 0.0049 |
| 642 | 6356 | ethyl nonanoate | 0.0081 |
| 653 | 53264 | 4-methoxybenzyl alcohol (p-anisyl alcohol) | 0.0679 |
| 676 | 14481 | cinnamyl alcohol | 0.0185 |
| 685 | 16094 | 3-hydroxybenzyl alcohol | 0.0205 |
| 718 | 12188570 | 3-hydroxybenzaldehyde + 4-ethoxymethylphenol | 15.5440 |
| 751 | 122634 | methyl cinnamte | 0.1564 |
| 759 | 60715743 | vanillin | 77.4301 |
| 796 | 90669 | methyl-p-methoxybenzoate (methyl paraben) | 0.1156 |
| 809 | 2228588 | vanillyl ethyl ether + trace of 4-hydroxy-3-methoxybenzyl alcohol | 2.8421 |
| 832 | 224829 | p-hydroxybenzoic acid | 0.2867 |
| 839 | 37335 | acetovanillone | 0.0476 |
| 892 | 950342 | vanillic acid | 1.2120 |
| 908 | 405589 | 3,4-dihydroxybenzaldehyde | 0.5172 |
| 935 | 82429 | 3,4-dihydroxy-5-methoxybenzaldehyde | 0.1051 |
| 954 | 6212 | ethyl homovanillate | 0.0079 |
| 975 | 78148 | syringealdehyde | 0.0997 |
| 1266 | 14130 | ethyl palmitate | 0.0180 |
| 1518 | 21477 | ethyl linoleate | 0.0274 |
| | 78413588 | Total | 100.0000 |

10.     The main constituent of vanillin (MS Scan # 759, 77.4301 Peak Area %) plays a

significant role but contributes between one-quarter and one-third of the overall flavor and aroma

impact of vanilla.

11.     The other organic compounds provide between two-thirds (2/3) and three-quarters (3/4) of vanilla's flavor.

12.     These odor-active compounds such as acids, ethers, alcohols, acetals, tannins, heterocyclics, phenolics, hydrocarbons, esters and carbonyls.

13.     Methyl cinnamate (MS Scan # 751) and cinnamyl alcohol (MS Scan # 676, 0.0185) provide distinct cinnamon and creamy notes to vanilla.

14.     P-cresol (MS Scan # 415, 0.0247) contributes flavor notes described as "balsamic, woody, spicy."

15.     Vanilla typically has buttery notes, from compounds like butanal, diethyl acetal (MS Scan # 141, 0.035).

16.     Acetovanillone (MS Scan # 839, 0.0476) contributes a sweet, honey note.

17.     Guiaicol's contribution to vanilla adds notes described as "sweet spicy" (MS Scan # 443, 0.3666).

18.     P-hydroxybenzoic acid (MS Scan # 832, 0.2867) and vanillic acid (MS Scan # 892, 1.2120) are significant phenolic compounds which contribute to vanilla's aroma.

19.     Vanillyl ethyl ether (MS Scan # 809, 2.8421)  is highly correlated with the "rummy [and] resinous" notes of vanilla.

20.     Vanillin is mainly sweet, and lacks smoky, floral, creamy and buttery notes expected from vanilla.

21.     The popularity of vanilla in the 19th century led to the isolation of the vanillin molecule from vanilla, which became the first artificial flavor.

22.     This availability of low-cost vanillin resulted in companies adulterating foods purporting to contain vanilla, by either including no vanilla or a *de minimis* amount, boosted by

added synthetic vanillin.

23.    However, vanillin separated from the rest of the vanilla bean does not constitute vanilla flavor.

24.    Sensory evaluation of synthetic vanillin is mainly sweet, with a lackluster "chemical-like" taste and odor because it lacks the other molecules in vanilla.

25.    Consumers would buy foods labeled as "vanilla" only to later discover they lacks the richness and layered taste provided from vanilla beans.

26.    Government entities regularly penalized companies that deceived consumers by labeling their foods as flavored with "vanilla" but were little more than vanillin with caramel coloring.

27.    The earliest efforts to prevent this type of fraud was the U.S. Pharmacopeia standard, which required a specific weight of vanilla beans as the source for vanilla extract.

28.    By focusing on the objective criteria of weight, companies were prevented from adding vanillin to a small amount of vanilla beans.

29.    Congress later directed the Food and Drug Administration ("FDA") to establish standards to prevent the marketing of foods from which traditional constituents were removed and new or different (often cheaper and artificial) ingredients were substituted.

30.    Vanilla was one of these foods, and regulations were enacted to prevent products labeled as "vanilla" to be flavored mainly from vanillin, because this would not provide the characteristic vanilla taste.

31.    For over fifty (50) years, companies' adherence to these industry standards meant consumers relied upon a statement of "vanilla," without qualification, to mean the flavoring was only from the ingredient of vanilla beans, would taste like vanilla and not taste like vanillin.

32.     These standards effectively established custom and practice so that consumers' experience has primed them to infer from a product's labeling whether the flavor source was entirely from the characterizing vanilla bean ingredient or not.

33.     In early 2018, in response to a surge in fraudulently labeled vanilla flavored foods, the flavor industry – The Flavor and Extract Manufacturers Association of the United States or "FEMA" – urged companies to cease labeling foods only with "vanilla" which were actually flavored with vanillin. *See* John B. Hallagan and Joanna Drake, FEMA, "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," Perfumer & Flavorist, Vol. 43 at p. 46, Apr. 25, 2018 ("Hallagan & Drake").[1]

34.     This practice had been outlawed but the safeguards provided by regulations had become a memory.

35.     Vanillin has long been known as an artificial flavor because it is chemically synthesized from lignin and guaiacol. 21 C.F.R. § 101.22.

36.     The regulations required that when vanilla and vanillin were combined, the food be labeled as artificial. 21 C.F.R. § 169.180.

37.     When Plaintiff and consumers observed the statement, "Vanilla" and the absence of any qualifying terms, they expected the Product to have a vanilla taste provided exclusively or predominantly from vanilla beans.

38.     Though the Product's front label only references "Vanilla," the ingredient list identifies "Natural Vanilla Flavor With Other Natural Flavors."

---

[1] Hallagan and Drake, "There are many current examples of food products that are labeled as 'vanilla' that are clearly mislabeled and therefore in violation of FDA regulations." FEMA's *cri de coeur* was not completely magnanimous. It presently enjoys a special relationship with the FDA whereby it is allowed to "self-regulate." Where companies flout the regulations, FEMA's status would be undermined.

**INGREDIENTS:** ALMONDMILK (FILTERED WATER, ALMONDS), CANE SUGAR, CALCIUM CARBONATE, <mark>NATURAL VANILLA FLAVOR WITH OTHER NATURAL FLAVORS</mark>, SEA SALT, POTASSIUM CITRATE, SUNFLOWER LECITHIN, GELLAN GUM, VITAMIN A PALMITATE, VITAMIN D2, VITAMIN E (D-ALPHA TOCOPHEROL).

39.    This designation fails to tell consumers that the amount of flavoring from vanilla beans in the Product is *de minimis* and the "other natural flavors" contains vanillin, an artificial flavor, which overpowers the vanilla taste.

40.    Because the Product contains added vanillin, it lacks the flavor notes and vanilla taste of foods labeled as "vanilla."

41.    Analysis of the Product reveals an abnormal excess of vanillin relative to the amount and presence of the above-described odor-active compounds in authentic vanilla, an indicator of vanillin from non-vanilla sources.

42.    The Product's flavoring fails to reveal detectable levels of significant odor active compounds responsible for giving a food a vanilla taste.

43.    The representation as "vanilla" is misleading because consumers expect to be told the Product is flavored with vanillin through a label statement of "artificially flavored" because vanilla's taste is not synonymous with vanillin.

44.    Consumers who read the ingredient of "natural vanilla flavor with other natural flavor" will not be told that these flavors cause the Product to not taste like vanilla, because the amount of vanilla used is *de minimis*, as opposed to the use of artificial, synthetic vanillin.

45.    Consumers are entitled to know "whether the product [they are buying] is flavored with a vanilla flavoring derived from vanilla beans, in whole or in part, or whether the food's

vanilla flavor is provided by flavorings not derived from vanilla beans."[2]

46.    Where a product is flavored from sources other than vanilla beans, it will not taste like vanilla.

47.    Defendant knows consumers will pay more for the Product because the front label only states "vanilla" and not "artificially flavored" and "does not taste like real vanilla."

48.    Defendant's omission and failure to disclose these facts is deceptive and misleading to consumers who want a vanilla flavored product that contains flavoring mainly from vanilla beans and tastes like vanilla.

49.    Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiff and consumers.

50.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

51.    The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

52.    Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for them.

53.    As a result of the false and misleading labeling, the Product is an sold at a premium price, approximately no less than $ 4.29 per 64 OZ, excluding tax, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

---

[2] Id.

Jurisdiction and Venue

54.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28

U.S.C. § 1332(d)(2)

55.    Under CAFA, district courts have "original federal jurisdiction over class actions

involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal

diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

56.    Plaintiff Syuzanna Alexander is a citizen of Maryland.

57.    Plaintiff Saskia Armitage is a citizen of New York.

58.    Defendant Wegmans Food Markets, Inc., is a New York corporation with a principal

place of business in Rochester, Monroe County, New York and is a citizen of New York.

59.    "Minimal diversity" exists because plaintiff Syuzanna Alexander and defendant are

citizens of different states.

60.    Upon information and belief, sales of the Product in New York exceed $5 million

per year, exclusive of interest and costs, and the aggregate amount in controversy exceeds $5

million per year.

61.    Venue is proper in this judicial district because defendant is an entity with the

capacity to sue and be sued in its common name under applicable law and is deemed to reside in

this judicial district because defendant is subject to the court's personal jurisdiction in this State

with respect to this action. *See* 28 U.S.C. § 1391(b)(1); *see also* 28 U.S.C. § 1391(c)(2).

62.    Because New York has more than one judicial district and defendant is a corporation

subject to personal jurisdiction in this State, defendant resides in this district because its contacts

are sufficient to subject it to personal jurisdiction if this district were a separate State, due to its

store at 106 Corporate Park Dr, Harrison, NY 10604. *See* 28 U.S.C. § 1391(d).

63.    Venue is further supported because many class members reside in this District.

Parties

64.    Plaintiff Syuzanna Alexander is a citizen of Maryland, Owings Mills, Baltimore County.

65.    Defendant Wegmans Food Markets, Inc. is a New York corporation with a principal place of business in Rochester, New York, Monroe County and is a citizen of New York.

66.    Defendant operates several hundred grocery stores in the Eastern United States.

67.    During the relevant statutes of limitations for each cause of action alleged, plaintiff purchased the Product within her district and/or State for personal and household consumption and/or use in reliance on the representations of the Product.

68.    Plaintiff purchased the Product on numerous occasions, even regularly, during 2018, 2019 and 2020, at defendant's stores including the location at 10100 Reisterstown Rd Owings Mills MD 21117-3815.

69.    Plaintiff bought the Product at or exceeding the above-referenced price because she liked the product for its intended use and relied upon the front label claims, expected a vanilla taste, and that such taste would come exclusively and/or predominantly from vanilla beans and did not expect a taste of vanillin, provided by artificial vanilla flavors.

70.    Plaintiff was deceived by and relied upon the Product's deceptive labeling.

71.    Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

72.    The Product was worth less than what Plaintiff paid for it and she would not have paid as much absent Defendant's false and misleading statements and omissions.

73.    Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's labels are consistent with the Product's components.

<u>Class Allegations</u>

74.    The class will consist of all purchasers of the Product who reside in Maryland and New York during the applicable statutes of limitations.

75.    Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

76.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

77.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

78.    Plaintiff is an adequate representatives because her interests do not conflict with other members.

79.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

80.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

81.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

82.    Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Maryland Consumer Protection Act § 13-301 *et seq.* and
New York General Business Law ("GBL") §§ 349 & 350,
(Consumer Protection Statutes)</u>

83.    Plaintiff incorporates by reference all preceding paragraphs.

84.    Plaintiff and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product

type.

85.    Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

86.    Defendant misrepresented the substantive, quantitative, qualitative, compositional and/or organoleptic attributes of the Product.

87.    The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect the Product to be flavored by sources which were not predominantly vanilla beans and expect a Product that tastes like vanilla, because that is what the front label said – "Vanilla."

88.    The Product did not taste like vanilla to Plaintiff and class members.

89.    Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

90.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

91.    Plaintiff incorporates by reference all preceding paragraphs.

92.    Defendant misrepresented the substantive, quantitative, qualitative, compositional and/or organoleptic attributes of the Product.

93.    The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect artificial vanilla because it was not stated on the front label or ingredient list, where consumers are accustomed to looking and seeing this information.

94.    Defendant had a duty to disclose the non-vanilla, artificial flavors and tell consumers

the Product did not taste like vanilla because it lacked sufficient amounts of the compounds which provide the characteristic vanilla taste.

95.    This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

96.    The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

97.    Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

98.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

99.    Plaintiff incorporates by reference all preceding paragraphs.

100.   The Product was manufactured, labeled and sold by defendant or at its express directions and instructions, and warranted to plaintiff and class members that they possessed substantive, quality, organoleptic, and/or compositional attributes it did not.

101.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

102.   This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

103.   Plaintiff provided or will provide notice to defendant, its agents, representatives, and their employees.

104.   Defendant received notice and should have been aware of these misrepresentations

due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

105.  The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

106.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

107.  Plaintiff incorporates by reference all preceding paragraphs.

108.  Defendant misrepresented the substantive, quality, compositional and/or organoleptic attributes of the Product.

109.  The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect a product labeled as "Vanilla" to be flavored mainly from artificial vanillin and therefore not taste like vanilla.

110.  Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers.

111.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Unjust Enrichment</u>

112.  Plaintiff incorporates by reference all preceding paragraphs.

113.  Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek

restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

  **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   November 1, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

7:20-cv-09148
United States District Court
Southern District of New York

Syuzanna Alexander, individually and on behalf of all others similarly situated,

                              Plaintiff,


        - against -


Wegmans Food Markets, Inc.,

                              Defendant

---

# Class Action Complaint

---

```
         Sheehan & Associates, P.C.
          60 Cuttermill Rd Ste 409
          Great Neck NY 11021-3104
             Tel: (516) 268-7080
             Fax: (516) 234-7800
```

---

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  November 1, 2020

                                        /s/ Spencer Sheehan
                                        Spencer Sheehan